Alice I. SANDEFER, Petitioner,

v.

DISTRICT COURT, CITY AND COUNTY OF DENVER, and the Honorable Henry E. Santo, District Court Judge, Respondents.

No. 81SA153.

Supreme Court of Colorado, En Banc.

Oct. 19, 1981.

Rehearing Denied Nov. 9, 1981.

Head, Moye, Carver & Ray, John F. Head, Edwin A. Naylor, Denver, for petitioner.

Ireland, Stapleton & Pryor, P. C., William G. Imig, John H. Evans, Denver, for respondents.

ROVIRA, Justice.

The petitioner, Alice I. Sandefer, seeks relief in the nature of mandamus pursuant to C.A.R. 21. She contends that the trial court erred in ordering the petitioner to submit certain claims to arbitration. We issued a rule to show cause why the requested relief should not be granted, and we now discharge the rule in part and make the rule absolute in part.

This action arises out of certain securities transactions starting in 1974 between the petitioner and Reynolds Securities, Inc. (Reynolds), a securities broker. Pursuant to their dealings, the petitioner executed a standard "Customer's Agreement" which provided in pertinent part:

"Any controversy between us arising out of or relating to this contract or the breach thereof shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Arbitration Committee of the New York Stock Exchange, as I may elect.... Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction. It is understood and agreed that the arbitrators ... shall be required fully to conform with the laws of the State of New York in arriving at their determination with respect to the issues of any controversy submitted to them hereunder."

In 1979 the petitioner filed a complaint against Reynolds stating three claims for relief. The first was for breach of fiduciary duty; the second, for common law fraud; and the third was for violation of the Colorado Securities Act, section 11–51–125, C.R.S. 1973. Reynolds moved to dismiss, asserting that the agreement to arbitrate ousted the district court of jurisdiction. The district court agreed and dismissed the action for lack of subject matter jurisdiction. Petitioner appealed, arguing that the Colorado Securities Act, section 11–51–125(7),[1] C.R.S. 1973, made arbitration agreements between brokers and investors unenforceable.

In *Sandefer v. Reynolds Securities, Inc.,* Colo.App., 618 P.2d 690, *cert. denied,* No. 80SC232 (Oct. 6, 1980), the court of appeals found that section 11–51–125(7), C.R.S. 1973, was virtually identical with 15 U.S.C. § 77n of the Federal Securities Act of 1933 and that: "The United States Supreme Court has held that § 77n renders compulsory customer-broker arbitration agreements unenforceable as applied to disputes arising under the Securities and Exchange Act of 1933 [sic]. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)." The court of appeals adopted the rationale of *Wilko* and held that the arbitration agreement was an attempt to waive compliance with section 11–51–125(1), C.R.S. 1973, and under section 11–51–125(7), C.R.S. 1973, such an attempted waiver is void.

On remand, Reynolds filed a motion to compel arbitration of the petitioner's first and second claims (the common law claims) and to stay proceedings of the Colorado Securities Act claim pending arbitration. The respondent court determined that the agreement to arbitrate was valid with respect to the common law claims and "pursuant to § 13–22–204(4), C.R.S. 1973, if such claims are severable from Plaintiff's [petitioner's] Securities Act claim, proceedings herein should be stayed and the common

1. Section 11–51–125(7), C.R.S. 1973, provides that:

"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this article or any rule or order under this article is void."

law claims should be arbitrated."[2] The respondent court concluded that the common law claims involved factual and legal issues such as the existence of a duty, breach, reliance, intent and scienter that would not arise in relation to the securities claim; and, therefore, the common law claims were severable, both factually and legally, from the securities claim.

The petitioner claims that the trial court acted contrary to the court of appeals mandate, in excess of its jurisdiction, and in abuse of its discretion.

## I.

This case presents us with two questions: first, whether the decision of the court of appeals foreclosed the trial court from ruling on the arbitrability of the common law claims; and second, whether the ruling of the trial court ordering arbitration of the common law claims and staying action on the securities claim was correct.

The petitioner argues for an expansive reading of the court of appeals decision. She claims that the opinion of the court of appeals is clear and the trial court had no alternative but to try all of the petitioner's claims since the court of appeals had determined that the arbitration agreement was void as to all claims. We do not agree.

In our view the *Sandefer* decision dealt solely with the Colorado Securities Act and the securities act claim of the petitioner. Noting the similarity between section 11–51–125(7) and 15 U.S.C. § 77n of the Securities Act of 1933, the court of appeals adopted the rationale of *Wilko v. Swan, supra,* which held that arbitration agreements were unenforceable as to disputes arising under the 1933 Act. The court of appeals only considered the application and effect of the Colorado Securities Act, and there was no discussion in the opinion of the arbitrability of any claim other than that

arising out of the Colorado Securities Act. In short, we do not read *Sandefer* as foreclosing consideration by the respondent court of whether the common law claims should be arbitrated. The rule is discharged as to this first issue.

Having arrived at this conclusion, we might simply remand and allow the proceedings below to continue. However, in the interests of judicial economy, time, and expense, we will consider whether the ruling of the trial court was correct in view of the public policy favoring arbitration, the allegations in the complaint, the time and expense of separate arbitration and judicial proceedings, and the possibility of inconsistent decisions in separate proceedings.

## II.

Arbitration is an efficient and convenient method of dispute resolution, and it has long been favored by this court. *Columbine Valley Const. Co. v. Board of Directors,* Colo., 626 P.2d 686 (1981). *See also Colo. Const.* art. XVIII, sec. 3 (directing the general assembly to pass legislation providing for a voluntary system of arbitration); Uniform Arbitration Act, 13–22–201 to –223, C.R.S. 1973 (1980 Supp.) (applies to agreements made on or after July 14, 1975). Were it not for the overriding policy of the Colorado Securities Act, this dispute would properly be sent to arbitration. Since the court of appeals established that agreements to arbitrate future disputes arising under the securities act are not enforceable, we must now decide whether nonstatutory claims may be submitted to arbitration under an agreement to arbitrate future disputes when the nonstatutory claims are part of a complaint alleging a violation of the securities act.

This is a case of first impression in Colorado; however, there are many federal cases which address the issue. Since the

---

2. Title 13, Article 22, Part 2, C.R.S. 1973 (1980 Supp.), is the Uniform Arbitration Act of 1975, and section 13–22–204(4) provides that "(4) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has

been made under this section, or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay."

statutory language which we are interpreting and the policy considerations to be balanced are virtually identical to those in the federal scheme, these cases are highly persuasive. *Lowery v. Ford Hill Investment Co.*, 192 Colo. 125, 556 P.2d 1201 (1976).

The *Wilko* doctrine has not been extended to cover common law claims. *See, e. g., Sawyer v. Raymond, James & Assocs., Inc.*, 642 F.2d 791 (5th Cir. 1981); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir. 1974); *Stockwell v. Reynolds & Co.*, 252 F.Supp. 215 (S.D.N.Y.1965). *See also Jackson v. Beech*, 636 F.2d 831, 833 n.4 (D.C.Cir.1980). Therefore, federal courts applying *Wilko* have been confronted with cases in which a claim for relief based upon the federal securities act has been coupled with pendent state common law claims. In these cases, the courts have applied the doctrine of intertwining as a mechanism for determining whether pendent state claims should be arbitrated or whether the federal court should retain jurisdiction over these claims and try them along with the statutory nonarbitrable claim. *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

The intertwining doctrine involves an analysis of the legal and factual issues relative to each of the allegations in the complaint. The court will consider whether the arbitrator would be required to "review the same facts needed to establish the . . . securities law claim." *Id.* at 543. If the factual determinations and legal conclusions are inextricably intertwined, then the court must not sever the action. To hold otherwise would risk inconsistent determinations and could result in the arbitrator's infringing upon the court's duty to decide the securities claim.

Applying the intertwining doctrine, the court will decide if it is "impractical if not impossible to separate out non-arbitrable . . . securities law claims from arbitrable . . . claims . . . ." *Id.* *See also Lee v. Ply\* Gem Industries, Inc.*, 593 F.2d 1266 (D.C. Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (discussing the analogous "permeation" doctrine with re-

spect to nonarbitrable antitrust claims and arbitrable common law claims); *Sawyer v. Raymond, James & Assocs., Inc., supra; Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir. 1981); *Kavit v. A.L. Stamm & Co., supra*, (considering the issue in terms of pendent jurisdiction principles); *Lane v. Dean Witter Reynolds*, 505 F.Supp. 610 (W.D.Okla.1980); *Dehart v. Moore*, 424 F.Supp. 55 (S.D.Fla.1976); *Macchiavelli v. Shearson, Hammill & Co.*, 384 F.Supp. 21 (E.D.Cal.1974); *Shapiro v. Jaslow*, 320 F.Supp. 598 (S.D.N.Y.1970).

If the claims are found to be inextricably intertwined, the court will deny arbitration in order to avoid duplication of effort and the possibility of ending the controversy in arbitration and losing the opportunity to try the securities claim in accord with *Wilko*. *Sibley v. Tandy Corp., supra; Lane v. Dean Witter Reynolds, supra; Shapiro v. Jaslow, supra*. On the other hand, if the claims are distinct, the court must sever the action and allow the nonstatutory claims to go to arbitration because the findings of the arbitrator will neither encroach upon nor duplicate the findings of the trial court. This analysis results in maximizing judicial efficiency and resource allocation while still fulfilling the policy dictates of the securities laws.

In adopting the *Wilko* doctrine, the court of appeals recognized that the language of the securities act overrode the policies which dictate the encouragement of resolving disputes through arbitration. *Sandefer v. Reynolds Securities, Inc., supra*. If the arbitrable claims are distinct from the statutory nonarbitrable claims, however, there is an opportunity to fulfill the policy of encouraging arbitration by enforcing valid arbitration agreements while, at the same time, fulfilling the mandate and purpose of the securities act by giving the claimant a judicial trial on the securities-based claim. To hold otherwise would result in denying a party the enforcement of its agreement without any reason.

From an examination of the complaint, the respondent court concluded that the nonarbitrable securities claim was distinct

and severable from the other claims. The basis for its conclusion was that the petitioner's fraud and breach of fiduciary duty claims involved factual and legal issues, such as the existence of a duty, breach, reliance, intent and scienter, that would not arise in the trial of the securities claim. It further found that there was a difference between the statute of limitations applicable to the common law claims and the securities claim. Thus, the respondent court stayed all proceedings on the securities claim and ordered that the parties proceed to arbitration on the other claims.

We disagree with the conclusion of the trial court. Our analysis of the complaint indicates that all three claims arise out of the same transactions. The ultimate conclusions of law and fact that would have to be resolved before deciding these claims are so interconnected as to dictate against severance. See Miley v. Oppenheimer & Co., supra.

When the elements of the securities violation are compared with the elements of the common law claims, it becomes apparent why the claims should not be severed. Under section 11–51–125(1), C.R.S. 1973, the petitioner must prove that Reynolds sold securities "by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made . . . not misleading . . . ." Reynolds may then avoid liability if it can show that it "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission . . . ." Id.

In Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 71 P.2d 154 (1937), the elements of fraud were stated as follows:

"(1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose. (3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, [of] the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage."

Finally, the breach of fiduciary duty claim is based upon the same allegations of fact as the fraud claim. Proof of any breach will be based upon proof of the same misrepresentations and omissions that constitute part of the claim for fraud.

While the elements of breach of fiduciary duty, fraud, and a securities act violation are not identical, the ultimate issues and determinations are sufficiently intertwined to require the court to decide all of the claims. The finder of fact will hear the same witnesses and examine the same documents, and the major thrust of these claims is identical. The fact finder would have to determine whether there were untrue statements of material fact or omissions of material fact. Furthermore, the state of mind of the Reynolds agent is an ultimate issue in all of the claims. To allow an arbitrator to decide the common law claims might foreclose the trial court from reaching a decision or might risk the possibility of inconsistent determinations on the same factual and legal issues.

The rule to show cause is made absolute with respect to the ruling of the trial court ordering arbitration, and the district court is instructed to proceed in accordance with the views expressed herein.