**Jeffrey COHEN, Plaintiff–Appellant,**

v.

**Andrew L. QUIAT, Michael R. Dice, Quiat & Dice, a Colorado Partnership, Defendants–Appellees.**

**No. 86CA1061.**

Colorado Court of Appeals, Div. III.

Nov. 19, 1987.

Rehearing Denied Dec. 17, 1987.

Ireland, Stapleton, Pryor & Pascoe, P.C., William G. Imig, Neal S. Cohen, Denver, for plaintiff-appellant.

Feder, Morris & Tamblyn, P.C., Harold A. Feder, Denver, for defendants-appellees.

CRISWELL, Judge.

Plaintiff's appeal of the district court judgment vacating an arbitration award raises the issue whether a panel of arbitrators "exceeded their powers" within the meaning of the Uniform Arbitration Act, § 13–22–214(1)(a)(III), C.R.S. (1986 Cum. Supp.). Contrary to the district court, we conclude that the panel did not exceed the powers granted to it, and therefore, we reverse the judgment and remand for the entry of a judgment confirming the award.

Plaintiff, Jeffrey Cohen, was a junior member of a law partnership, consisting of himself and defendants Andrew L. Quiat and Michael R. Dice, which was governed by a written partnership agreement. This agreement called for the creation of a "Policy Group," initially consisting of all three partners and the firm's business manager.

To this group was delegated extensive authority, including the authority to determine the amount of capital of each partner and the accounting principles to be followed by the firm. The agreement also provided that, upon a partner's withdrawal, he was to be paid the amount standing to his credit in his capital account, as well as his share "in the net realizable value of accounts receivable and work in progress of the Partnership as determined by the Policy Group." Any decision made by the Policy Group was to be "final, binding and conclusive," provided it was "in accordance with the terms and provisions of the agreement."

The agreement also provided that an accounting of the firm's business was to be made at the end of each fiscal year. Such accounting, if not objected to in writing by some partner within two months after his receipt of a copy of the same, would be "deemed to be conclusive and final and to constitute an accord as to all its aspects."

Finally, the partnership agreement provided for binding arbitration of:

> "*Any controversy or dispute* relating to ... the agreement or the Partnership and its affairs ... except that (1) any accounting *provided for in this agreement to be conclusive* shall not be subject to such procedure ...; and (2) express and complete recognition shall always be given by any Arbitration Panel ... to any final decision of the Firm [including a decision by the Policy Group]." (emphasis supplied)

In accordance with the terms of the agreement, Cohen gave prior notice of his withdrawal as a partner, effective March 31, 1985. A meeting of the partners, apparently as the Policy Group, was held on March 30. At that time, when Cohen refused to reach an agreement for his withdrawal on a basis other than that set forth in the agreement, Quiat and Dice proceeded to adopt a series of "decisions" that purported to "clarify" certain of the agreement's provisions. Among these decisions, all of which were prompted by Cohen's withdrawal, was one that interpreted the agreement's reference to the value of the partnership's accounts receivable and work in progress to refer only to each individual partner's "portfolio of accounts receivable," rather than to all of the partnership's accounts receivable. Another such decision resolved that an evaluation of such an individual partner's accounts receivable could result in a "debit balance" for such a partner. A third decision adopted a 75% collection rate as the rate to be used in evaluating the accounts receivable and directed that an accounting, utilizing the principles adopted, be prepared.

The accounting thus prepared reflected that the partnership had total accounts receivable of some $364,000, for which Cohen was responsible for some $203,000, or about 56%. However, it concluded that some $175,000 of Cohen's accounts were uncollectible, leaving a "net" value for these accounts of approximately $28,700.

Rather than treating these accounts as having a net value of this amount, however, this accounting subtracted from the $203,000 in total accounts receivable attributable to Cohen 25% thereof, representing the normal rate of uncollectibles, plus the $28,700 in good accounts; the remainder of approximately $124,000 was treated as being owed by Cohen to the firm. Upon receiving a copy of this accounting, Cohen objected to the same in writing and timely requested the convening of an arbitration panel.

Before the panel, and later before the district court, Quiat and Dice maintained that the decisions made by them and the accounting based thereon were binding upon Cohen and were not subject to arbitration under the agreement. The arbitration panel disagreed, ruling, in effect, that the method of evaluating the accounts receivable was not justified by a proper interpretation of the pertinent provisions of the agreement. The panel concluded that a proper evaluation required that all of the partnership's accounts receivable be considered as a whole; that application of a 75% collection rate was reasonable; that from the resulting figure the amount of the outstanding accounts payable of the partnership had to be deducted; and that

Cohen was entitled to his share (22.5%) of the resulting balance, or $35,390.

Upon review of this award under the Uniform Arbitration Act, § 13–22–201, et seq., C.R.S. (1986 Cum.Supp.), the district court concluded that the arbitration panel had "exceeded its powers," *see* § 13–22–214(1)(a)(III), C.R.S. (1986 Cum. Supp.), because the arbitration clause made the decisions rendered by Quiat and Dice, and the accounting prepared pursuant thereto, final and binding and, therefore, not arbitrable. We disagree.

■ Arbitration is favored in Colorado. *See* Colo. Const., art. XVIII, § 3; *Ellis v. Rocky Mountain Empire Sports, Inc.*, 43 Colo.App. 166, 602 P.2d 895 (1979). Hence, when a question of the arbitrability of a particular dispute or issue arises, the scope of the arbitration provision is, in the first instance, a matter for determination by the arbitrators. *Youmans v. District Court*, 197 Colo. 28, 589 P.2d 487 (1979). And, "where there is a reasonable basis for construing the agreement in support of arbitrability, the legislative policy underlying the [Uniform Arbitration] Act" requires that the decision of the arbitrators upon the point be accepted. *Cabs, Inc. v. Delivery Drivers Local Union No. 435*, 39 Colo. App. 241, 566 P.2d 1078 (1977).

In this case, the arbitrators concluded that the arbitration provision did not require them to refrain from exercising their jurisdiction or to give binding effect to the decisions of this Policy Group. In our view, this interpretation of the parties' agreement was both reasonable and correct.

■ The arbitration clause is a "general," or "unlimited," one in the sense that it applies to "any controversy or dispute" arising under the terms of the agreement. *See Ellis v. Rocky Mountain Empire Sports, Inc., supra.* Thus, the panel of arbitrators had authority over *all* disputes that might arise under the agreement, unless the matters at issue fell within at least one of the two exceptions described in the arbitration clause. And, with respect to a determination of the scope of the arbitration clause, all doubts must be resolved in favor of a dispute's arbitrability. *See Cabs, Inc. v. Delivery Drivers Local Union No. 435, supra.* Further, upon this issue, Quiat and Dice had the burden of demonstrating that the arbitrators had "exceeded their powers" under the statute. *Hilltop Construction, Inc. v. Lou Park Apartments*, 324 N.W.2d 236 (Minn.1982); *Smitty's Super–Valu, Inc. v. Pasqualetti*, 22 Ariz.App. 178, 525 P.2d 309 (1974).

■ The first exception to the arbitrators' otherwise broad authority provides that the arbitration "procedure" shall not be applied to an accounting that, by the terms of the agreement, is deemed to be "conclusive." There is only one provision of the agreement that addresses the subject of conclusive accountings. That provision, as noted, deals with fiscal year-end accountings, the contents of which become conclusive upon any partner not presenting written objections within two months of the receipt of a copy of the same.

All of the parties agree that the accounting prepared in reliance upon the decisions made by Quiat and Dice was not a year-end accounting to which the foregoing provisions were applicable. Further, the undisputed evidence shows that Cohen made written objections to this accounting a few days after being presented with a copy of the same. Thus, since this accounting was not one that the agreement made conclusive, it is not one of the accountings referred to in the first exception to the arbitrators' authority. There is, therefore, no basis for asserting that it was conclusive upon Cohen or that it was not subject to the arbitration procedure.

The second exception, which refers to final decisions of the Policy Group, differs from the first exception in a significant manner. Unlike the first exception, the second does not say that such a decision shall not be subjected to the arbitration procedure. On the contrary, it expressly refers to an "Arbitration Panel," but provides that such a final decision must be given "recognition" by that panel. However, the authority to make such a decision is, by the substantive provisions of the agreement, limited to those that are "in accordance with the terms and provisions of the agreement." Thus, unless the deci-

sions made are consistent with the agreement's terms, such decisions were not binding upon Cohen and the panel was not required to "recognize" them.

Moreover, since arbitrators acting within the proper sphere of their authority are fully empowered to interpret an agreement's terms, and since the language of the second exception does not expressly remove the question of the validity of any such final decision from the panel's consideration, it might well be concluded that the judiciary is not empowered to review the panel's decision upon that issue. *See Cabus v. Dairyland Insurance Co.*, 656 P.2d 54 (Colo.App.1982).

Nevertheless, Cohen argues that the ruling of the Policy Group, that only his accounts receivable were to be evaluated and its ruling that such evaluation could result in a "negative" value are inconsistent with the other provisions of the agreement. We agree.

The agreement is specific in requiring an evaluation of the accounts receivable and work in progress "of the Partnership." In addition, other provisions make clear that a partner has no individual interest in any accounts receivable, but that they are all owned by the partnership itself. Under these provisions, the "net realizable value" that the Policy Group was charged with determining referred to the value of *all* of the firm's accounts, not just the accounts attributable to Cohen. The decision of Quiat and Dice to the contrary was not in accord with the agreement's express provisions and, thus, was not required to be recognized by the panel.

The judgment of the district court is reversed and the cause is remanded to that court with directions to enter a judgment confirming the arbitration award and granting to Cohen such other relief under that award and the statute as might now be appropriate.

KELLY and TURSI, JJ., concur.