**LAWRENCE STREET PARTNERS, LTD., a Colorado limited partnership, Plaintiff–Intervenor–Appellee,**

v.

**LAWRENCE STREET VENTURERS, a Colorado general partnership; Walter K. Arbuckle; Kenneth D. Luff; T. Keith Marks; S.P. Newell; Donald F. Todd; Newheight Venture No. 3, Defendants–Appellants.**

**No. 89CA0017.**

Colorado Court of Appeals, Div. IV.

Dec. 21, 1989.

Cortez & Friedman, P.C., Miles C. Cortez, Jr. and Kathleen S. Hanrahan, Englewood, for plaintiff-intervenor-appellee.

William R. Fishman, Denver, Welborn Dufford Brown & Tooley, P.C., Beverly J. Quail, Denver, for defendants-appellants.

Opinion by Judge NEY.

In this partnership dispute, Lawrence Street Venturers and its individual partners (defendants) appeal from a trial court order denying their motion to compel arbitration. We affirm in part, reverse in part, and remand with directions.

In 1983, defendants and plaintiff, Lawrence Street Partners, Ltd., entered into a joint venture agreement (agreement) establishing the Lawrence Street II Joint Venture (joint venture), a general partnership. The joint venture owned a 50 percent interest in the Lawrence Street Center Joint Venture, another joint venture that owned a 14–story office building.

The building was threatened by foreclosure when the Lawrence Street Center Joint Venture encountered financial difficulties, and plaintiff filed this action seeking a declaratory judgment that the agreement imposed a contractual duty upon defendants to fund the joint venture's operating deficits by making additional capital contributions. The complaint also asserted claims for breach of contract, breach of fiduciary duty, misrepresentation, rescission, promissory estoppel, and breach of good faith and fair dealing.

Defendants filed a motion to compel arbitration on the basis of arbitration provi-

sions contained in the agreement. The trial court denied the motion, finding that the arbitration provisions did not apply to claims that arose from defendants' alleged failure to make capital contributions.

## I.

■ Relying on *Youmans v. District Court*, 197 Colo. 28, 589 P.2d 487 (1979), defendants contend that any questions as to whether a right to arbitration exists and whether the arbitration clause is applicable must be resolved by the arbitrators, not by the trial court. We disagree.

The *Youmans* line of cases does indicate that the scope of arbitration must be resolved initially by the arbitrator and not the court; however, those cases do not concern situations in which the arbitration agreement expressly prohibits arbitration of certain claims. Here, plaintiffs brought this action in the trial court because the arbitration agreement prohibits arbitration of one of plaintiff's claims and the agreement permits the litigation of that issue.

This controversy is similar to that in *Water Works Employees Local No. 1045 v. Board of Water Works*, 44 Colo.App. 178, 615 P.2d 52 (1980), in which we held that determination of the scope of the parties' agreement to arbitrate is committed to the courts, and if it is apparent from the language of the contract that the issue sought to be arbitrated lies beyond the scope of the arbitration clause, then a court cannot order arbitration. *Cabs, Inc. v. Delivery Drivers, Local No. 435*, 39 Colo.App. 241, 566 P.2d 1078 (1977).

The agreement provides, subject to the exceptions set forth in paragraph 13.2, that all claims arising in connection with the joint venture shall be submitted to arbitration. Paragraph 13.2 provides: *"The obligation of the Venturers to make capital contributions shall not be submitted to arbitration* but the Joint Venture may pursue all remedies provided in this agreement or at law or in equity." (emphasis supplied)

Thus, the agreement expressly excepts from arbitration any claims concerning the obligation to make capital contributions, and the trial court properly determined that it could not compel arbitration as to those claims.

## II.

### A.

Defendants next contend that plaintiff, a general partner, cannot maintain an action arising out of the partnership business against another general partner. We disagree.

■ Generally, an action by one partner against his co-partner will not lie on a claim growing out of the partnership transactions until the partnership business is wound up and the accounts are finally settled. *See L.H. Heiselt, Inc. v. Brown*, 108 Colo. 562, 120 P.2d 644 (1941).

However, this rule is not without exception. As stated in *Yoder v. Hooper*, 695 P.2d 1182 (Colo.App.1984), *aff'd*, 737 P.2d 852 (Colo.1987): "[A]lthough ... as a general rule an action for damages for breach of partnership obligations may not be maintained in the absence of an accounting, ... that rule does not apply where the plaintiff seeks specific equitable relief."

Here, in addition to its prayer for declaratory relief, plaintiff's complaint seeks rescission of the agreement and the imposition of a constructive trust, both of which are equitable remedies. Therefore, plaintiff is not barred under general partnership law from seeking judicial relief in this case.

### B.

Defendants also contend that paragraph 13.2 of the agreement allows only the joint venture to assert judicial claims for capital contributions. Therefore, their argument continues, a partner's claims, in contrast to the partnership's claims, for capital contributions must be submitted to arbitration. We disagree.

■ Contracts should be construed to give effect to the intent of the parties. The intent of the parties should be determined from the entire contract, and effect must be given to every provision if possible. *In re Application for Water Rights of Estes Park v. Northern Colorado Water Conservancy District*, 677 P.2d 320 (Colo.1984).

■ Paragraph 13.2 of the agreement *prohibits* arbitration concerning a venturer's obligation to make capital contributions and *permits* the joint venture to pursue all remedies at law or in equity for breach of that obligation.

If we are to effectuate both provisions of paragraph 13.2, we cannot construe it to prohibit a venturer from pursuing legal or equitable judicial remedies for the other venturers' alleged failure to make capital contributions. Accordingly, we conclude that the parties intended to exclude from arbitration all claims concerning a venturer's obligation to make capital contributions. Therefore, the trial court correctly determined that plaintiff had a contractual right to litigate these claims against defendants.

### III.

■ Finally, defendants contend that the trial court erred in denying their motion to compel arbitration of plaintiff's claims for breach of contract, breach of fiduciary duty, misrepresentation, rescission, promissory estoppel, and breach of good faith and fair dealing. To the extent that these claims are distinctly separate and severable from the capital contribution claims, we agree. *See* § 13–22–204, C.R.S. (1987 Repl. Vol. 6A); *Cohen v. Quiat*, 749 P.2d 453 (Colo.App.1987).

In *Sandefer v. District Court*, 635 P.2d 547 (Colo.1981), our supreme court held that, since all of the plaintiff's claims arose from the same transactions, the "intertwining doctrine" should be applied to determine whether it was possible to sever the arbitrable claims from the non-arbitrable claims. Application of the intertwining doctrine:

> "involves an analysis of the legal and factual issues relative to each of the allegations in the complaint. The court will consider whether the arbitrator would be required to 'review the same facts needed to establish the ... [non-arbitrable claim].' ... If the factual determinations and legal conclusions are inextricably intertwined, then the court must not

sever the action. To hold otherwise would risk inconsistent determinations and could result in the arbitrator's infringing upon the court's duty to decide the [non-arbitrable claim]...."

*Sandefer v. District Court, supra.*

Although *Sandefer* was partially overruled by *Sager v. District Court*, 698 P.2d 250 (Colo.1985), on grounds that the Federal Arbitration Act pre-empted a waiver provision of the state securities law, the intertwining doctrine remains viable and must be used in determining the arbitrability of claims arising from the same facts, where one of those claims is non-arbitrable. *See* § 13–22–204(4), C.R.S. (1987 Repl.Vol. 6A).

Here, the trial court found that all of plaintiff's claims arose "directly or indirectly" from the alleged failure of defendants to make capital contributions as required by the agreement, but it did not determine whether the claims were inextricably intertwined. Therefore, we cannot determine whether the trial court properly denied arbitration as to all of plaintiff's claims. *See Sandefer, supra.*

We recognize that if the trial court determines that some of plaintiff's arbitrable claims seeking legal remedies are inextricably intertwined with the non-arbitrable claim, the question may arise whether one partner may maintain this action against another partner absent an accounting and winding up of the business. *See L.H. Heiselt, Inc. v. Brown, supra.* However, we do not address this issue since no argument has been presented to us by either party regarding this contingency.

Accordingly, the judgment is affirmed in all respects except as to the court's refusal to compel arbitration to the claims for breach of contract, breach of fiduciary duty, misrepresentation, rescission, promissory estoppel, and breach of good faith and fair dealing. As to that refusal, the judgment is reversed, and the cause is remanded with directions to determine which, if any, of those claims are inextricably intertwined with the capital contribution claim such that they, too, are non-arbitrable and for further proceeding on such claims.

CRISWELL and HUME, JJ., concur.