**Janet HUGHLEY, Plaintiff–Appellee,**

v.

**ROCKY MOUNTAIN HEALTH MAINTE-NANCE ORGANIZATION, INCORPO-RATED, a Colorado nonprofit corporation, Defendant–Appellant.**

No. 94CA0344.

Colorado Court of Appeals,
Div. I.

Feb. 23, 1995.

As Modified on Denial of Rehearing
Aug. 31, 1995.

Certiorari Granted Feb. 12, 1996.

Wherry & Wherry, P.C., Burton I. Wherry, Edward P. Carlstead, Denver, for plaintiff-appellee.

Hoskin, Farina, Aldrich & Kampf, P.C., Gregory K. Hoskin, John T. Howe, Grand Junction, for defendant-appellant.

Opinion by Judge CRISWELL.

In this medical benefits coverage dispute, defendant, Rocky Mountain Health Maintenance Organization, Inc., a Colorado non-profit corporation (RMHMO), appeals the Denver District Court's issuance of its preliminary injunction directing it to pay some $133,000 for chemotherapy treatment of plaintiff, Janet Hughley, which defendant considered not to be a benefit under the contract providing health care benefits to plaintiff. In entering such injunction and in refusing to dismiss plaintiff's complaint or to stay proceedings, the Denver District Court concluded that the arbitration provisions contained within the pertinent health care contract did not require plaintiff to submit her claim to arbitration. After the issuance of this injunction, venue in the cause was transferred to the Mesa County District Court. We disagree with the Denver District Court's interpretation of the governing contract provision. Hence, we vacate its prior

order and remand the cause to the Mesa County District Court with directions to stay proceedings pending completion of the required arbitration proceedings.

The agreement between plaintiff and defendant, pursuant to which defendant agreed to provide medical benefits to plaintiff, contained the following pertinent provisions:

12. *COMPLAINT PROCEDURE.*

A. *Governing Clause. Any disagreement or dispute regarding the denial of Benefits* or other services to a Member ... *shall* be governed by the terms of this paragraph 12.

B. *Filing of Complaint.* Any Member who seeks to protest the denial of Benefits under this Contract ... *shall* ... give notice to RMHMO of such complaint. In the event such notice is not given within [the required] six-month period, the complaint shall conclusively be deemed waived. RMHMO shall have [60 days within] which to attempt an informal resolution to the satisfaction of the Member. In the event the complaint cannot be informally resolved, RMHMO or the Member *may* refer the complaint to the Grievance Committee for review....

C. *Committee Review.* Complaints concerning the denial of Benefits ... *shall* be reviewed by the Grievance Committee.... Following [an evidentiary] hearing, the Grievance Committee shall make its findings and issue a written decision. *Unless appealed pursuant to subparagraph 12.D, such decision shall be final and binding on the parties hereto.*

D. *Arbitration.* Either the Member or RMHMO *shall have the right to appeal* the decision of the Grievance Committee by submitting the same to binding arbitration under the Commercial Arbitration Rules then in effect adopted and applied with the American Arbitration Association, provided the appeal is initiated within thirty (30) days of the committee's ruling.... (emphasis supplied)

Plaintiff has breast cancer and her physicians recommended a medical treatment known as "high dose chemotherapy with autologous hematopoietic stem cell rescue" (HDC). Defendant denied that their agreement provided coverage for this procedure.

As a consequence of defendant's denial of coverage, plaintiff initially invoked the informal resolution procedures called for by paragraph 12.B. quoted above. When that was unsuccessful, she submitted the dispute to the grievance committee called for by paragraph 12.C. That committee determined that the HDC procedure was not covered by the benefits agreement. Plaintiff then filed a complaint in district court, asserting various tort and contract claims against defendant for denial of coverage, without requesting arbitration under paragraph 12.D. She also sought and obtained a preliminary injunction directing defendant to pay for the procedure.

Defendant moved to dismiss plaintiff's complaint or to stay the trial court proceedings, based on the arbitration clause in its policy. However, the trial court denied defendant's motion, concluding that the agreement's arbitration provisions did not unambiguously state that arbitration was mandatory.

## I.

Defendant first contends that the trial court erred in finding the arbitration clause was ambiguous. We agree.

The public policy of this state encourages the resolution of disputes through arbitration. A valid and enforceable arbitration provision divests the court of jurisdiction over all disputes that are to be arbitrated, pending the conclusion of arbitration. *Mountain Plains Constructors, Inc. v. Torrez,* 785 P.2d 928 (Colo.1990).

Upon application for arbitration by a party, a court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision. Section 13–22–204(1), C.R.S. (1987 Repl.Vol. 6A); *Eychner v. Van Vleet,* 870 P.2d 486 (Colo. App.1993).

If the court decides that a dispute is subject to the arbitration provision, it is for the arbitrator, not for the court, to determine

the merits of the parties' dispute. *Jefferson County School District No. R–1 v. Shorey,* 826 P.2d 830 (Colo.1992).

■ Arbitration is a matter of contract, and a party cannot be compelled to submit to arbitration any dispute which he or she has not agreed to submit. To determine the scope of an arbitration clause, a court must examine the wording of the provision and the terms of the contract in which the provision is included. A court must strive to give effect to the mutual intent of the parties and must consider the subject matter and purposes to be served by the agreement. *Eychner v. Van Vleet, supra.*

■ Here, the trial court did not indicate the basis for its conclusion that the arbitration provision contained in the parties' agreement was ambiguous. However, that conclusion appears to have been based on two phrases: First, the language in paragraph 12.B. that the insured "may" submit his or her dispute to the grievance committee and, second, the language in paragraph 12.D. that the insured "has the right" to appeal the decision of the grievance committee to binding arbitration.

Plaintiff argues that these phrases indicate that arbitration is permissive and that they do not foreclose the pursuit of litigation, rather than arbitration. We disagree.

First, the use of the word "may" here does not reveal any intent that parties are free to avoid the contract procedure in favor of judicial suit. The supreme court has interpreted the word "may" in an agreement governing grievance procedures as "simply a general grant of power" to resolve disputes through the contract procedure. *Albertson's, Inc. v. Rhoads,* 196 Colo. 159, 161, 582 P.2d 1049, 1050 (1978); *Pueblo v. Pueblo Ass'n of Government Employees,* 839 P.2d 503 (Colo.App. 1992) (even if agreement uses word "may," arbitration provided for in that agreement is the exclusive remedy for any claimed violation); *Block 175 Corp. v. Fairmont Hotel Management Co.,* 648 F.Supp. 450 (D.Colo. 1986) (use of word "may" in arbitration clause merely gives party option of arbitrating or abandoning the claim).

Further, the "right to appeal" phrase in paragraph 12.D. cannot be read apart from the rest of the pertinent provisions. The last sentence of paragraph 12.C. states, that "unless appealed pursuant to subparagraph 12.-D.," the decision of the grievance committee "*shall* be final and binding on the parties hereto." (emphasis supplied) Taken together, the provision clearly states that the grievance committee's decision is binding on the parties, unless that decision is submitted to the arbitrators.

Hughley relies on *Centennial Properties, Inc. v. Roy,* 146 Colo. 307, 309, 361 P.2d 444, 445 (1961), in which the court held that: "[A]n arbitration clause will not be construed as ousting the courts of jurisdiction, unless such construction is inevitable ... [and] the contract ... either expressly or by clear implication make[s] such arbitration a condition precedent to the right of action...."

However, *Centennial Properties* was decided prior to the adoption of the Uniform Arbitration Act of 1975, § 13–22–201, et seq., C.R.S. (1987 Repl.Vol. 6A). The explicit purpose of the Act is "to validate voluntary written arbitration agreements ... [and to] make the arbitration process effective." Section 13–22–202, C.R.S. (1987 Repl.Vol. 6A). The Act adopts a policy to encourage the settlement of disputes through the arbitration process, and any doubts whether a dispute is subject to arbitration are now to be resolved in favor of, not against, arbitration. *Wales v. State Farm Mutual Automobile Insurance Co.,* 38 Colo.App. 360, 559 P.2d 255 (1976).

Hence, the trial court erred in concluding that the dispute was not subject to binding arbitration and in entering its preliminary injunction in the face of this mandatory arbitration clause.

■ In this respect, plaintiff argues that, even if the trial court had no authority to adjudicate the merits of the parties' dispute, it nevertheless could enter an injunction designed to aid or facilitate the arbitration process. We agree that, in appropriate circumstances, a court can enter an injunction that is designed to preserve the *status quo,* so as to prevent the issues that are to be submitted to arbitration from becoming moot. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. District Court,* 672 P.2d 1015 (Colo.1983).

Here, however, the trial court did not enter its injunction so as to preserve any issue for resolution by the arbitrators, and it did not, therefore, consider whether the nature of its injunction was proper for this purpose. Further, we do not consider an injunction that requires one of the parties to the dispute to take affirmative action to provide to the other party all of the relief that could be obtained only after a full arbitration hearing to constitute a *"status quo"* injunction under the *Merrill, Lynch* rationale.

## II.

Plaintiff also contends that the tort claims are not subject to arbitration. We disagree.

All of Hughley's tort claims are based on defendant's denial of benefits and, therefore, are subject to the arbitration provision. *See Wheeler v. Boettcher & Co.*, 539 P.2d 1322 (Colo.App.1975) (not selected for official publication) (plaintiff's suggestion that the claim is not subject to arbitration because it sounds in tort is without merit); *see also Cohen v. Quiat*, 749 P.2d 453 (Colo.App.1987) (with respect to the determination of the scope of the arbitration clause, all doubts must be resolved in favor of a dispute's arbitrability).

## III.

Finally, plaintiff requests this court to enter an order determining that she has not waived her right to arbitration by filing her court complaint and by not seeking arbitration within the 30 days specified in the arbitration provision. We decline to address this issue, as it was not an issue presented to the trial court. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo. 1986) (issues not raised in the trial court cannot be raised on appeal).

Further, not only may the question of waiver be dependent upon the resolution of disputed factual issues, but there may even exist a question whether such issue is one for the arbitrators or one for the courts. *See Pueblo v. Pueblo Ass'n of Government Employees, supra.* Under these circumstances, this issue is not ripe for our determination.

The injunction entered by the trial court is vacated, and the cause is remanded to that court with directions to enter an order staying all proceedings before that court pending completion of any arbitration proceedings.

METZGER and KAPELKE, JJ., concur.