Herbert **HUGHLEY**, Personal Representative, in Substitution for Janet Hughley, Petitioner,

v.

**ROCKY MOUNTAIN HEALTH MAINTENANCE ORGANIZATION, INCORPORATED, a Colorado Nonprofit Corporation, Respondent.**

No. 95SC634.

Supreme Court of Colorado,
En Banc.

Dec. 3, 1996.

---

Wherry & Wherry, P.C., Burton I. Wherry, Edward P. Carlstead, Lance J. Ingalls, Denver, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, for Petitioner.

Hoskin, Farina, Aldrich & Kampf, P.C., Gregory K. Hoskin, John T. Howe, Grand Junction, for Respondent.

Justice SCOTT delivered the Opinion of the Court.

We granted Herbert Hughley's petition for certiorari to review the court of appeals' judgment in *Hughley v. Rocky Mountain Health Maintenance Organization, Inc.*, 910 P.2d 30 (Colo.App.1995). Our order granting certiorari sets forth only the following question for review: "Whether the court of appeals erred in dissolving the temporary restraining order despite its ruling that the trial court did not have jurisdiction over the issues in the underlying case?" Because the trial court's orders were issued solely to "preserve the status quo," we conclude that the court of appeals erred when it vacated the trial court's temporary restraining order.

We therefore reverse the judgment of the court of appeals, vacate its order, and remand this case with directions that the court of appeals return this matter to the Mesa County District Court to conduct further proceedings consistent with this opinion.

## I.

### A. Historical Facts

In January 1992, petitioner Herbert Hughley's spouse, Janet Hughley, was diagnosed with breast cancer.[1] She received a series of standard chemotherapy treatments paid for by Rocky Mountain Health Maintenance Organization (RMHMO) through August 1992, but the cancer recurred in June 1993. Because her cancer was at an advanced stage, Janet Hughley's physicians recommended a medical treatment called "high dose chemotherapy with autologous hematopoietic stem cell rescue" (HDC).

Administration of the HDC treatment required Janet Hughley's admission to University Hospital. University Hospital informed Janet Hughley that, prior to admission, she had to have on file a pre-authorization commitment from RMHMO for the treatment, cash, or a letter of credit commitment for not less than $133,000, or any bed made available to her would be offered to another patient.

Although RMHMO covered the earlier standard chemotherapy treatments, it refused Hughley's request for a pre-authorization commitment for the HDC treatment. By letter dated July 21, 1993, RMHMO refused to cover the procedure, claiming that the HDC treatment, which included a bone marrow transplant, was "not a covered benefit" within Janet Hughley's RMHMO Benefits Contract (Benefits Contract). The letter also indicated that an appeal of the decision had to be filed within sixty days in accordance with the dispute resolution provisions of Janet Hughley's Benefits Contract. Section 12 of the Benefits Contract details the complaint procedure:

### 12. COMPLAINT PROCEDURE.

A. *Governing Clause.* Any disagreement or dispute regarding the denial of Benefits or other services to a Member ... shall be governed by the terms of this paragraph 12.

B. *Filing of Complaint.* Any Member who seeks to protest the denial of Benefits under this Contract ... shall ... give notice to RMHMO of such complaint.... In the event the complaint cannot be informally resolved, RMHMO or the Member *may* refer the complaint to the Grievance Committee for review....

C. *Committee Review.* ... Following the [evidentiary] hearing, the Grievance Committee shall make its findings and issue a written decision. Unless appealed pursuant to subparagraph 12.D, such decision shall be final and binding on the parties hereto.

D. *Arbitration.* Either the Member or RMHMO shall have the right to appeal the decision of the Grievance Committee by submitting the same to binding arbitration under the Commercial Arbitration Rules then in effect adopted and applied with the American Arbitration Association, provided the appeal is initiated within thirty (30) days of the committee's ruling.

(Emphasis added.)

On September 3, 1993, Janet Hughley invoked the complaint procedure and appealed to the Grievance Committee in accordance with the Benefits Contract. On September 24, 1993, the Grievance Committee denied her complaint, concluding that the HDC treatment was not covered by her Benefits Contract.

At a time not clearly set forth in the record but, we presume, contemporaneous with her efforts to obtain coverage, University Hospital advised Janet Hughley that a bed was available to permit her admission for the HDC treatment during the week of October 11, 1993. At the same time, her physicians informed her that while she currently met the criteria for the HDC treatment, they could not determine how long she would continue to meet the criteria, and advised her

1. Janet Hughley was the plaintiff in the trial court proceedings below. However, upon her passing in October 1994, her husband, Herbert Hughley, was substituted in all proceedings as her personal representative.

that the prognosis for a positive response from the HDC treatment, and thus her life expectancy and probability of ultimate survival, diminished with each passing day.

The Hughleys, however, did not have sufficient liquid assets to meet the financial requirements of University Hospital. Believing their only source for funds to meet University Hospital's financial requirements was RMHMO, the Hughleys retained counsel on October 12, 1993.

### B. Procedural History

On October 14, 1993, Janet Hughley filed suit in Denver District Court.[2] At the same time, she made application for a temporary restraining order claiming that immediate and irreparable injury to her health would occur unless the status quo was preserved. In her application, Janet Hughley asserted that no adequate legal remedy existed to replace her lost life expectancy or to correct her poor health caused by further delay in her admission to University Hospital. Janet Hughley also offered to post a bond in the amount of the commitment necessary to pay for the HDC treatment her physicians opined would be necessary for her survival.

The same day, in *ex parte* proceedings, the trial court granted Janet Hughley's application for a temporary restraining order requiring RMHMO to pay to University Hospital or make a commitment for payment in the amount of $133,000 for the HDC treatment. The court also ordered Janet Hughley to post a bond in the registry of the court for the benefit of RMHMO in a like amount.[3]

The trial court entered its temporary restraining order directing RMHMO to satisfy the financial requirements of University Hospital. The trial court ruled that "there are reasonable grounds to believe that absent court order, RMHMO will not commit the funds necessary for [Janet Hughley] to be admitted to University Hospital for [HDC treatment]" and that "absent such a commitment by RMHMO, Plaintiff Janet Hughley will suffer immediate and irreparable injury, loss or damages, before the adverse party or its attorney can be hear[d] in opposition." Concluding that Janet Hughley had "no adequate legal remedy to preserve her life and health," the trial court issued its temporary order to "preserve the status quo during the time prior to trial on the merits."

On October 18, 1993, RMHMO moved to dismiss or in the alternative to stay proceedings, to dissolve the temporary restraining order, and to change venue to Mesa County District Court, where RMHMO maintains its principal place of business. In support of its motion, RMHMO asserted that based on the dispute provisions and mandatory arbitration clause· in the Benefits Contract, the trial court did not have jurisdiction over Janet Hughley's claims. RMHMO included a copy of the Benefits Contract in its motion. RMHMO also asserted that because Janet Hughley was admitted to University Hospital on October 12, prior to the issuance of the trial court's temporary restraining order, the temporary restraining order was therefore unnecessary and should be dissolved. Significantly, while RMHMO provided the court with a copy of the Benefits Contract and described its "exclusive complaint procedure," including section 12D's arbitration clause, its motion stated: "Here, RMHMO is not seeking an order compelling arbitration pursuant to section 13–22–204, C.R.S. Instead, RMHMO is seeking dismissal of [Hughley's] claims because she did not submit to the arbitration provision of the contract."[4]

On October 22, 1993, prior to the expiration of its temporary restraining order, the trial court conducted a hearing on Hughley's

2. Her complaint alleged, among other claims, breach of contract, misrepresentation, and breach of fiduciary duty, naming RMHMO as the defendant.

3. On October 21, 1993, Hughley posted a $133,-000 bond with the registry of the court.

4. In his brief, Herbert Hughley argues that the judgment of the court of appeals should be reversed because it did not have jurisdiction to consider an interlocutory appeal from the denial of a motion to dismiss. However, the court of appeals had jurisdiction pursuant to our appellate rule C.A.R. 1(a)(3), which provides that "[a]n appeal to the appellate court may be taken from ... [a]n order granting or denying a temporary injunction." C.A.R. 1(a)(3).

motion for preliminary injunction. At that time, the trial court had not yet ruled on RMHMO's motion to dismiss or stay proceedings pending arbitration.

At the conclusion of the hearing, the trial court issued its preliminary injunction, replacing the temporary restraining order, which would otherwise expire and be of no further force.[5] Like the court's earlier order, the preliminary injunction was conditioned on the Hughleys posting a bond in the amount of $133,000 to protect RMHMO's interest should the dispute be resolved in RMHMO's favor.

At that hearing, the trial court concluded that:

> [W]hat is risked here by [RMHMO] is the loss of $13[3],000, which is subject to a bond put in the Registry of the Court by [Janet Hughley], and what is at risk for [Janet Hughley] is, in fact, the loss of her life. There is further no doubt in the mind of the Court that the status quo would be preserved by the issuance of this mandatory injunction. The Plaintiff is currently alive, with a good prognosis, and in the absence of injunctive relief, the evidence before the Court suggests that she may not be alive when this case reaches some determination on the merits.
>
> The Court, having found that the status quo would be preserved; the balance of equities favors granting the injunction. . . .
>
> . . . .
>
> And the Court, based on Dr. Jones' testimony, finds that there is a substantial risk, a genuine and real danger here, the danger of real, immediate and irreparable in-

jury that can easily be prevented by the granting of injunctive relief.[6]

More than a month later, the trial court denied RMHMO's motion to dismiss, concluding that the Benefits Contract was ambiguous as to whether arbitration was mandatory.[7] Relying upon section 13–22–221, 6A C.R.S. (1987), RMHMO appealed.[8]

On review, the court of appeals vacated the trial court's injunction and remanded with directions to enter an order staying all proceedings pending completion of arbitration. The court of appeals agreed with Janet Hughley that, "in appropriate circumstances, a court can enter an injunction that is designed to preserve the *status quo,* so as to prevent the issues that are to be submitted to arbitration from becoming moot." *Hughley,* 910 P.2d at 33 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. District Court,* 672 P.2d 1015 (Colo.1983)). The court of appeals held, nonetheless, that in this case, the injunction granted to Hughley did not constitute a "status quo" injunction because it required "one of the parties to the dispute to take affirmative action to provide to the other party all of the relief that could be obtained only after a full arbitration hearing." *Id.* at 34. We disagree and therefore reverse.

In particular, we reject the court of appeals' conclusion as to the effect of the trial court's temporary order. By doing so, we now make clear that where necessary to preserve the status quo so that an agreement to arbitrate does not become a hollow formality or result in a futile endeavor, a trial court does have the limited jurisdiction to enter temporary orders, including a grant of in-

---

5. For purposes of this review, we treat the *preliminary* injunction as a "temporary restraining order," and hence, as within the scope of the question posed on certiorari.

6. The testimony of Dr. Jones was unrefuted and at no time has RMHMO contested the prognosis or conclusions of Janet Hughley's physicians that her life was threatened by the inability to obtain HDC treatment.

7. The record is devoid of any indication that Janet Hughley or RMHMO submitted or attempted to submit the coverage dispute to arbitration, or that an arbitrator was appointed and prepared to assert jurisdiction. For purposes of this pro-

ceeding, we assume neither party initiated arbitration proceedings and, therefore, are unable to conclude that Janet Hughley refused to arbitrate the dispute.

8. RMHMO's notice of appeal states: "The basis for the Court of Appeals jurisdiction is section 13–22–221, C.R.S., which provides that an appeal may be taken from an 'order denying an application to compel arbitration made under section 13–22–204.'" By our judgment today we do not address whether the court of appeals had jurisdiction to review the trial court's various orders dated December 9, 1993, October 22, 1993, and October 14, 1993, under that statute.

junctive relief. Moreover, we hold that a trial court's power to preserve the pre-arbitration status quo exists when the parties have previously entered into an agreement that calls for mandatory arbitration.

## II.

### A.

■ As determined by our General Assembly, the public policy of Colorado encourages resolution of disputes through arbitration. Uniform Arbitration Act of 1975(Act), §§ 13–22–201 to –223, 6A C.R.S. (1987 & 1996 Supp.); *Lambdin v. District Court*, 903 P.2d 1126, 1130 (Colo.1995); *Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928, 930 (Colo.1990); *Ezell v. Rocky Mountain Bean & Elevator Co.*, 76 Colo. 409, 412, 232 P. 680, 681 (1925); *Wales v. State Farm Mut. Auto. Ins. Co.*, 38 Colo.App. 360, 362–63, 559 P.2d 255, 257 (1976). The purpose of the Act "is to legitimize and encourage the use of arbitration agreements for the settlements of disputes." *Lambdin*, 903 P.2d at 1130 (citing § 13–22–202, 6A C.R.S. (1987)). In recognition of this policy, courts may utilize the provisions of the Act to compel a party to honor an agreement to arbitrate. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 728 (10th Cir.1988). To facilitate that compulsion, the Act deprives the court of jurisdiction to proceed to trial where arbitration is required by agreement of the parties. *Id.;* § 13–22–203, 6A C.R.S. (1987). A valid, enforceable arbitration provision divests trial courts of jurisdiction over all questions that are to be submitted to arbitration, pending the conclusion of arbitration. *Mountain Plains*, 785 P.2d at 930. Moreover, under the Act, when a party makes application to a court and shows a provision in a written contract to submit a dispute to arbitration "and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration." § 13–22–204(1), 6A C.R.S. (1987).

■ In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. District Court*, 672 P.2d 1015 (Colo.1983) [hereinafter *Merrill Lynch v. District Court* ], we acknowledged the role of the judiciary and the proper use of injunctions as a means to further the resolution of disputes subject to arbitration. While our courts do not have jurisdiction to decide the merits of a dispute prior to arbitration,[9] we have held that a trial court has the authority to grant preliminary injunctive relief to preserve the status quo pending the outcome of arbitration. *Merrill Lynch v. District Court*, 672 P.2d at 1018–19. Even the statutory requirement that a civil action must be stayed pending the arbitrator's decision does not deprive a trial court of the limited power, in the interim, to preserve the status quo. *Id.* at 1018.

■ Indeed, preliminary relief is particularly appropriate where resort to arbitration may prove futile if the status quo is not preserved pending the selection and appointment of an arbitrator prior to the arbitrator's exercise of jurisdiction over the dispute. *Id.* To hold otherwise, i.e., that trial courts have absolutely no authority to provide interim relief in the arbitration context, would present a serious impediment to the fulfillment of our public policy favoring the voluntary establishment of an arbitral process for the peaceful resolution of disputes. In fact, if the status quo were in jeopardy and injunctive relief were not available, the promise of arbitration would ring hollow because in the event the party seeking interim relief should prevail at arbitration, she may otherwise be denied an effective remedy because the status quo was not maintained. Therefore, to avoid frustration of the arbitral process, under appropriate circumstances, a trial court's grant of injunctive relief is proper so long as it does not invade the province of the arbitrator by reaching the merits of the dispute. *See Royal Crown Bottling Co. v. Royal Crown Cola Co.*, 358 F.Supp. 290, 295 (D.Colo.1972); *Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 506 N.E.2d 140, 145 (1987).

### B.

■ Before us, RMHMO argues that the trial court was without jurisdiction to grant injunctive relief and that the court of appeals

---

9. *See Mountain Plains, supra; see also Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo.App.1993).

properly vacated the preliminary injunction because Janet Hughley's dispute with RMHMO was subject to mandatory arbitration. Hughley argues that, where necessary to preserve the status quo, a district court may grant injunctive relief to prevent issues that are properly resolved by arbitration from becoming moot. We agree with Hughley and conclude that interim injunctive relief, which is necessary to maintain the status quo but will not usurp the arbitrator's authority, does not conflict with our preference for dispute resolution through the arbitral process. The purpose of giving a trial court the limited authority to enter such injunctions is to prevent agreements to arbitrate from becoming a hollow formality.

Under our order granting certiorari, we do not decide whether the arbitration clause in the Benefits Contract ousted the court of jurisdiction with respect to the merits. Without reviewing its judgment, we note that the court of appeals did address that very question and held that the arbitrator, and not the court, had jurisdiction to hear and decide whether the Benefits Contract covered the HDC treatment. *Hughley,* 910 P.2d at 32–33. Today, we only decide whether the court of appeals erred in vacating the trial court's injunction entered to preserve the status quo. We conclude it did err.

When Janet Hughley made application for a temporary order restraining RMHMO from failing to issue a commitment to University Hospital so she could receive the HDC treatment her physicians stated was necessary to maintain her health, she was seeking to maintain the status quo. While RMHMO concedes that trial courts have the authority to enter similar orders pending arbitration, it asks us to affirm the court of appeals' judgment vacating the trial court's preliminary injunction. This we are unwilling to do for several reasons.

First, we disagree with the court of appeals' conclusion that the trial court's order was not a status quo injunction because it requires RMHMO to provide Janet Hughley "all of the relief that could be obtained only

after a full arbitration hearing." This is simply incorrect. Such a conclusion overlooks that portion of the trial court's order requiring the Hughleys to post a bond, which, if payments made for the HDC treatment are not found by the arbitrator to be within the coverage of the Benefits Contract, would make RMHMO whole. Thus, because, in fact, the Benefits Contract does not give RMHMO such protection for payments it is obligated to make, the trial court's injunction does not presume RMHMO is obligated to cover the HDC treatment.

Second, even assuming, as we must, that Janet Hughley is only entitled to preservation of the status quo until an arbitrator exercises jurisdiction over the dispute, the record here does not support a conclusion that an arbitrator had been appointed or that arbitration proceedings had been initiated. Similarly, while RMHMO is quick to point to its motion to dissolve the temporary order and to stay proceedings pending arbitration, no arbitration proceedings were pending at the time. Moreover, the record does not permit a conclusion that Janet Hughley ever refused to arbitrate and, as the record indicates, RMHMO never sought to compel arbitration.[10]

■ Third, assuming the trial court inappropriately entered its preliminary order pending a "trial on the merits" and not pending arbitration, such an error can readily be corrected on remand by instructing the trial court to modify its order. Here, if the temporary order did deprive the arbitrator of his or her jurisdiction over the merits of this dispute, i.e., whether the HDC treatment is covered under Janet Hughley's Benefits Contract, the court of appeals may direct the trial court, upon remand, to modify the preliminary injunction. Thus, once modified, the order maintaining the status quo would expire pending arbitration or the arbitrator's exercise of jurisdiction over the dispute.

■ In addition, we note that the need to preserve the status quo is especially important when an arbitrator is not immediately

10. We express no view as to whether either RMHMO or Janet Hughley waived any right to mandatory arbitration.

available to assert jurisdiction. A party to an arbitration agreement must have some recourse to ensure that the promise of arbitration is not hollow and that if successful, an award by the arbitrator is not an empty victory because conditions permitting a remedy have changed. The parties' option of turning to the courts for pre-arbitration recourse is not intended to permit a court to decide the merits of the dispute; that is what is required of the arbitrator. However, by permitting such orders, we intend to provide only a temporary remedy to preserve the parties' interests until the arbitrator can make a decision on the merits.

Finally, we find support for our decision in the legislative declaration of purpose to the Act. Section 13–22–202, 6A C.R.S. (1987), declares that "[t]he purpose of this [section] is to validate voluntary written arbitration agreements, make the arbitration process effective, provide necessary safeguards, and *provide an efficient procedure when judicial assistance is necessary.*" (Emphasis added.) Clearly, the General Assembly contemplated that courts would remain able to intervene, under appropriate circumstances, to further the arbitral process where parties have agreed to arbitrate their disputes. Because the injunction was preliminary and temporary, there was no permanency to the trial court's order. Moreover, it was not entered to determine the merits, nor did it affect the arbitrator's ability to assert jurisdiction and resolve the dispute when appointed and the question is properly submitted.

## C.

In a case similar to this, a federal court of appeals reviewing a pre-arbitration, open-ended preliminary injunction left the status quo order in place but remanded for modification of the order. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,* 844 F.2d 726 (10th Cir.1988). In that case, Merrill Lynch made application to a district court for a pre-arbitration temporary order to protect the status quo. *Id.* at 727–28. In *Dutton,* the federal court of appeals upheld the status

quo preliminary order, but remanded with instructions to the district court to "modify the preliminary injunction to expire when the issue of preserving the status quo is presented to and considered by the arbitration panel." *Id.* at 728.

Likewise, under these facts, we find modification of an order necessary to preserve the status quo and thus, in fact, in furtherance of the arbitral process, preferable to an appellate court order vacating a temporary order. Here, the trial court did have the authority to enter a preliminary injunction to preserve the status quo *pending the outcome of the arbitral proceedings. Merrill Lynch v. District Court,* 672 P.2d 1015 (Colo.1983). The trial court did not have the authority to preserve the status quo pending trial because the merits were required to be decided by arbitration.[11] Because the trial court's temporary order did not determine the merits of the dispute between the parties concerning coverage under the Benefits Contract for the HDC treatment, the order was not antagonistic to the arbitral process. Thus, because the trial court did not impermissibly decide the merits of this claim, it did not eviscerate the important public policy of honoring arbitration agreements. On the contrary, the trial court acted to further arbitration by preserving the status quo, that is, maintaining Hughley's health until the arbitrator determined whether RMHMO's policy covered the HDC procedure.

Because both the order temporarily restraining RMHMO and the preliminary injunction were designed to preserve the status quo, they were entered in furtherance of arbitral proceedings. Hence, we conclude that the court of appeals erred in vacating the preliminary order. While we agree the trial court had no authority to adjudicate the merits of the parties' dispute, it nevertheless did have the power to enter an order that merely maintained the status quo. Thus, because the trial court's order was entered to aid or facilitate the arbitral process, it should not have been vacated on appeal.

---

11. Because review of this legal conclusion by the court of appeals is beyond the scope of our review, we express no opinion as to whether arbitration was mandatory, but accept the judgment of the court of appeals on that issue solely for purposes of this proceeding.

III.

In sum, a trial court, in appropriate circumstances such as those present under the facts here, has the limited jurisdiction to enter a temporary order designed to preserve the status quo during the pendency of arbitration proceedings, so long as its order does not frustrate the arbitral process. Based on the uncontroverted evidence before the trial court, it was clear that Janet Hughley would suffer immediate and irreparable injury without the HDC treatment, regardless of whether RMHMO was later held obligated to pay for the HDC treatment. Preserving the status quo was imperative to preventing the issues for arbitration from becoming moot and Hughley's success, if any, through arbitration from resulting in a hollow victory. While the trial court order incorrectly set the term of its order upon resolution of the dispute *at trial* and not upon arbitration, we hold the proper action on review to be a remand for modification of that order and not, as did the court of appeals, to vacate a pre-arbitration status quo order.

Accordingly, we reverse the judgment of the court of appeals, vacate its order, and remand with directions to return this case to the Mesa County District Court.[12] On remand, the court of appeals shall give instructions to the Mesa County District Court that, if the status quo order is not moot, it should modify the preliminary injunction and, in any event, conduct further proceedings [13] consistent with this opinion.

---

12. While RMHMO appealed the actions of the Denver District Court, that trial court had surrendered jurisdiction over this case and transferred the case to the Mesa County District Court by grant of RMHMO's motion to transfer venue. *See* C.R.C.P. 98(e)(3); *Board of County Comm'rs v. District Court*, 632 P.2d 1017 (Colo.1981).

13. The record is unclear as to whether the parties continue to dispute coverage for the HDC treatment. However, because there may remain issues to be resolved, the trial court, upon consultation with the parties, may find it appropriate to conduct further hearings or to stay all proceedings pending the outcome of arbitration.