Carol A. GROHN, Plaintiff–Appellee,

v.

SISTERS OF CHARITY HEALTH SERVICES COLORADO, a Colorado corporation, and Centura Health Corporation, a Colorado corporation, Defendants–Appellants.

No. 97CA0669.

Colorado Court of Appeals, Div. II.

May 28, 1998.

Sander N. Karp, Denver, for Plaintiff–Appellee.

Sherman & Howard, L.L.C., Glenn H. Schlabs, Brenda K. Heinicke, Colorado Springs, for Defendants–Appellants.

Law Offices of Elizabeth L. Kearney, Elizabeth L. Kearney, Brent R. Ruther, Denver, Amicus Counsel.

Opinion by Judge TAUBMAN.

In this wrongful termination of employment action, defendants, Sisters of Charity Health Services of Colorado and Centura Health Corporation, appeal the district court's denial of their motion to stay proceedings and compel plaintiff, Carol A. Grohn, to arbitrate her claims. Because we conclude that arbitration is required, we reverse.

The dispositive issue in this appeal is whether the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq. (1994) requires arbitration of wrongful termination of employment claims, notwithstanding the holding in Lambdin v. District Court, 903 P.2d 1126 (Colo. 1995), that a claim based on the Colorado Wage Claim Act (CWCA), § 8–4–101, et seq., C.R.S.1997, should not otherwise be subject to arbitration.

Provident Health Partners, the predecessor in interest to Centura Health Corporation, employed Grohn as a clinical coordinator in August 1995. Grohn's employment contract contained an arbitration clause which provided:

> The parties agree that any dispute or controversy arising under or in connection with the Employment Agreement shall be submitted to arbitration as the exclusive forum.
>
> Manager [Grohn] agrees that arbitration is Manager's exclusive remedy for any matter arising under or relating to this Employment Agreement. Manager waives and renounces all rights which Manager might otherwise have to initiate proceedings before any local, state or federal agency or court, or internal proceedings within Provenant.

After Centura terminated Grohn's employment in November 1996, Grohn filed a complaint setting forth three claims for relief: a violation of the CWCA, breach of contract, and breach of the covenant of good faith and fair dealing. Defendants then filed a motion to stay the proceedings and compel arbitration pursuant to the Uniform Arbitration Act (UAA), § 13–22–201, et seq., C.R.S.1997, and the FAA.

The trial court, relying on Lambdin v. District Court, supra, concluded that Grohn's claim pursuant to the CWCA was not subject to the FAA and that, therefore, the agreement to arbitrate that claim was void. The court further concluded that because all three claims for relief were inextricably intertwined, none of the claims was subject to compulsory arbitration.

The parties do not contest the trial court's conclusion that Grohn's CWCA claim is inextricably intertwined with her common law claims so that all three claims must either be litigated or arbitrated. See Sandefer v. District Court, 635 P.2d 547 (Colo.1981) (because all three claims arose out of the same transaction, severance not appropriate under intertwining doctrine; court will deny arbitration if it is impractical or impossible to separate non-arbitrable claims from arbitrable claims) overruled as to different issue by Sager v. District Court, 698 P.2d 250 (1985); Lawrence Street Partners, Ltd. v. Lawrence Street Venturers, 786 P.2d 508 (Colo.App. 1989) (remand for determination of whether claims that arose directly or indirectly from same event were inextricably intertwined).

## I. Federal Arbitration Act

Defendants contend that the trial court erred in concluding that Grohn's claims were not subject to the FAA. More specifically, they contend that the employment agreement falls within the coverage of the FAA because the arbitration agreement is contained in Grohn's employment contract which is "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1994). Fur-

ther, defendants assert that the express exclusion from FAA coverage contained in 9 U.S.C. § 1 (1994) does not apply to Grohn because she was not a worker actually engaged in the movement of goods in interstate commerce. We agree.

The basic purpose of the FAA is to overcome courts' refusals to enforce arbitration agreements and to place such agreements upon the same footing as other contracts. *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

■ The FAA represents a liberal federal policy favoring arbitration agreements. Therefore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158, 163 (1985) (emphasis in original); *see* 9 U.S.C. §§ 3–4 (1994).

■ Written agreements to arbitrate that are subject to the FAA must be enforced when there exists a valid agreement to arbitrate, and the subject matter of the dispute is covered by the agreement. *Zdeb v. Shearson Lehman Brothers*, 674 F.Supp. 812 (D.Colo.1987).

A. Contract Involving Commerce.

■ The FAA in 9 U.S.C. § 2 (1994) provides in pertinent part:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The FAA defines commerce to include "commerce among the several States or with foreign nations ...." 9 U.S.C. § 1 (1994).

The Supreme Court has construed the phrase "involving commerce" as the functional equivalent of "affecting commerce," indicating that the FAA is intended to be as broad as Congress' power to regulate interstate commerce. The phrase "affecting commerce" normally signals a congressional intent to exercise its Commerce Clause powers to the fullest. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). *But cf. United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (concluding that possession of a firearm near a high school did not affect interstate commerce and, therefore, that Gun–Free School Zones Act exceeded Congress' authority to regulate commerce among the several states).

■ For the FAA to apply, a court must conclude that a contract containing an arbitration clause evidences a transaction involving commerce. This is not a rigorous inquiry. The contract need have only the slightest nexus with interstate commerce. *See Crawford v. West Jersey Health Systems*, 847 F.Supp. 1232 (D.N.J.1994) (collecting cases). *See also Foster v. Turley*, 808 F.2d 38 (10th Cir.1986) (requirement that underlying transaction involve commerce is to be broadly construed).

Contrary to Grohn's contention, the primary focus of our inquiry is not whether her employment agreement or the duties contemplated by it evidence a transaction involving commerce but, rather, whether defendants' business activities evidence a transaction involving commerce. *Compare Timms v. Greene*, 310 S.C. 469, 427 S.E.2d 642 (1993) (analyzing agreement and employee's duties under contract) *with Snyder v. Smith*, 736 F.2d 409 (7th Cir.1984) (court not limited to consideration only of those transactions expressly authorized on the face of the contract) and *Crawford v. West Jersey Health Systems, supra.*

The *Crawford* court, under circumstances analogous to those here, concluded that, be-

cause medical costs for many patients were paid through out-of-state insurance carriers, the employer advertised in out-of-state newspapers, and the employer received goods and services from out-of-state vendors, the employer was involved in interstate business activities. Further, because the former medical director's employment in a neonatal intensive care unit facilitated the employer's interstate business activities, her employment contract evidenced a transaction involving commerce and, thus, was within § 2 of the FAA.

Similarly, here, defendants' business involves out-of-state advertising, the treatment of out-of-state patients, receipt of payments from out-of-state insurers, and receipt of goods from vendors located out-of-state. Grohn's employment as a clinical coordinator also facilitated defendants' interstate business in that it related to defendants' interstate health care activities.

We recognize there is contrary authority concerning what activity involves commerce for purposes of 9 U.S.C. § 2. *See Timms v. Greene, supra* (concluding that although employer receives federal insurance payments, hires employees from out-of-state, purchases goods and services from out-of-state, and markets its services out-of-state, employee's contract and employment relationship with employer did not involve interstate commerce and, therefore, the FAA did not apply). Nonetheless, we find the reasoning in *Crawford* persuasive.

Thus, we conclude that the district court erred in concluding that Grohn's employment agreement was not a contract involving commerce for purposes of the FAA.

### B. Applicability of the Federal Arbitration Act

The FAA in 9 U.S.C. § 1 exempts from its provisions "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

Almost all circuit courts addressing the issue have reasoned that the strong federal policy in favor of arbitration requires a narrow reading of the exemption contained in 9

U.S.C. § 1. Those courts have limited the above-quoted language to seamen, railroad workers, and other workers actually involved in the interstate transportation of goods. *See McWilliams v. Logicon, Inc.*, 143 F.3d 573 (10th Cir.1998) (1998 WL 213673) (collecting cases); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998) (collecting cases); *O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir.1997) (collecting cases).

The reasoning relied upon by these courts is that a narrow reading of 9 U.S.C. § 1 is consistent with two established rules of statutory construction. First, a statute must be construed so as to give meaning to all its terms, and a broad reading of 9 U.S.C. § 1 would render the specific reference to seamen and railroad workers redundant. *See Farmers Group, Inc. v. Williams*, 805 P.2d 419 (Colo.1991).

Second, the rule of *ejusdem generis* is pertinent here. Under that principle of statutory construction, general terms that follow specific ones are to be interpreted as including only items similar in nature to those specified. Hence, here, the rule dictates that the phrase, "any other class of workers engaged in foreign or interstate commerce," should be limited in accordance with the preceding terms, "seamen" and "railroad workers."

Thus, the exemption should be construed to include only those other classes of workers who, like seamen and railroad workers, are engaged directly in the movement of interstate commerce. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997) (collecting cases).

Contrary to Grohn's contention, because the plain language of the statute is clear based upon the above rules of statutory construction, we need not consider the Act's legislative history. *See City of Westminster v. Dogan Construction Co.*, 930 P.2d 585 (Colo.1997).

We are persuaded by the reasoning of the majority of jurisdictions and conclude that "any other class of workers engaged in foreign or interstate commerce" should be construed narrowly. *But see United Electric,*

Radio & Machine Workers v. Miller Metal Products, 215 F.2d 221 (4th Cir.1954). See also Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Stevens, J. dissenting); Allied–Bruce Terminix Cos v. Dobson, supra, (Thomas, J. dissenting)(FAA does not apply in state courts). In so concluding, we recognize that the FAA has been held not to apply to collective bargaining agreements. See e.g., Miller v. Public Storage Management, Inc., 121 F.3d 215 (5th Cir.1997); United Food & Commercial Workers Local No. 7R v. Safeway Stores, Inc., 889 F.2d 940 (10th Cir. 1989). Thus, because the arbitration clause at issue here is contained in an individual employment contract, we conclude that the trial court erred when it implicitly concluded that Grohn's employment agreement was expressly excluded from the FAA.

## II. Supremacy Clause

Defendants next contend that the trial court erred in relying on Lambdin v. District Court, supra, to conclude that Grohn's claims were not subject to compulsory arbitration. Defendants assert that because the FAA applies to her employment agreement, the Supremacy Clause of the United States Constitution requires that the FAA prevail over any state law to the contrary. We agree.

### A.

At the outset, we address Grohn's claim that this argument is not properly before us because defendants raised the Supremacy Clause issue in the trial court only in its reply brief. Defendants acknowledge that they did not mention the Supremacy Clause until they submitted their reply brief, but contend that their opening brief sufficiently alerted Grohn to their argument that the FAA must prevail over state law. We agree with defendants.

Arguments raised for the first time in a reply brief before a trial court are not properly before an appellate court where the opposing party was unable to respond, and the trial court made no findings or conclusions with respect to that contention. See Flagstaff Enterprises Construction, Inc. v. Snow, 908 P.2d 1183 (Colo.App.1995).

It is not dispositive that defendants did not designate the argument as a Supremacy Clause argument. It is sufficient that the substance of the argument raised the issue. See Hutchinson v. Hutchinson, 149 Colo. 38, 367 P.2d 594 (1961) (substance of claim rather than the appellation controls).

Here, defendants, in their initial brief in support of motion to stay proceedings and to compel arbitration, stated:

> The FAA, effectively, creates a body of federal substantive law, which governs the issue of arbitration, that is applicable in state and federal court. These substantive rules under the FAA are applicable in state as well as federal courts, and state courts are required to apply such law so as to satisfy the requirements of the FAA.

Thus, we conclude that defendants sufficiently raised the issue before the trial court, and therefore, we may properly consider it.

### B.

We next address an issue specifically left unresolved in Lambdin: When the FAA applies to an employment contract so as to require arbitration, must a claim under the Colorado Wage Claim Act be arbitrated notwithstanding a firm state policy that such claims should not be subject to arbitration? Because the Supremacy Clause governs the resolution of this issue, we conclude that the CWCA claims here must be resolved by arbitration.

The CWCA provides: "Any person claiming to be aggrieved by violation of any provisions of this article or regulations prescribed pursuant to this article may file suit in any court having jurisdiction over the parties without regard to exhaustion of any administrative remedies." Section 8–4–123, C.R.S. 1997.

In addition, § 8–4–125, C.R.S.1997, of the CWCA provides: "Any agreement, written or oral, by any employee purporting to waive or to modify his rights in violation of this article shall be void."

In Lambdin, the supreme court interpreted the plain language of § 8–4–125 as en-

forceable against an employer where the parties have agreed to arbitrate disputes relating to the employment relationship and such agreement conflicts with the employee's rights established by the CWCA. However, the court declined to address the applicability of the FAA because the issue was not properly preserved for appellate review.

As noted, the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the FAA is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra.*

In enacting § 2 of the FAA, Congress withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Sager v. District Court, supra.*

In a similar case, the Supreme Court considered the arbitrability of state wage claims under the FAA. *See Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The *Perry* court determined that the federal policy of § 2 of the FAA conflicted with a California statute requiring that litigants be provided a judicial forum for resolution of wage disputes. Thus, the *Perry* court

concluded: "[U]nder the Supremacy Clause, the state statute must give way." *Perry v. Thomas, supra,* 482 U.S. at 491, 107 S.Ct. at 2526, 96 L.Ed.2d at 436.

Similarly, the Colorado supreme court, in striking down a nonwaiver provision of a state securities law, concluded that the "[Federal] Arbitration Act is part of the federal substantive law, and thus, under the Supremacy Clause, U.S. Const. art. VI, cl. 2, any conflicting state statute is void." *Sager v. District Court, supra,* 698 P.2d at 254.

Here, we conclude that the arbitration agreement between defendants and Grohn is within the coverage of the FAA and that §§ 8–4–123 and 8–4–125 conflict with § 2 of the FAA. Therefore, the FAA controls pursuant to the Supremacy Clause. *See Perry v. Thomas, supra; Sager v. District Court, supra.*

In light of this disposition, we need not address defendants' additional contention.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

ROTHENBERG and VOGT, JJ., concur.