24CA0288 Marriage of Thornton 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0288
El Paso County District Court No. 17DR31134
Honorable David Prince, Judge

---

In re the Marriage of

Lindsay Shaw Thornton n/k/a Lindsay Shaw,

Petitioner,

and

Murray Alexander Thornton,

Appellee,

And Concerning

Amy M. Springer and Springer & Steinberg, P.C.,

Attorneys-Appellants.

---

ORDERS AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GROVE
Harris and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Gelman Law LLC, Weston Cole, Greenwood Village, Colorado; Alchemy Law Firm, LLC, Douglas Norberg, Denver, Colorado for Appellee

Springer & Steinberg, P.C., Jeffrey A. Springer, Michael P. Zwiebel, Denver, Colorado, for Attorneys-Appellants

¶ 1    Amy M. Springer, together with her law firm, Springer & Steinberg, P.C. (jointly, Springer), appeals the district court's orders sanctioning her under C.R.C.P. 11 and section 13-17-102, C.R.S. 2024, and awarding attorney fees jointly and severally against her and her client, Lindsay Shaw Thornton n/k/a Lindsay Shaw (wife). We affirm in part, reverse in part, and remand the case with directions.

## I.    Background

¶ 2    Wife filed for divorce from Murray Alexander Thornton (husband) in 2017.  Wife represented herself at first but then hired a series of different attorneys as the case progressed.

¶ 3    Central to the dissolution proceedings was the division of marital property, including the valuation and distribution of potential damages related to an unresolved tort claim from a 2016 car crash that injured wife.  Three insurance policies were implicated in the claim's resolution: the tortfeasor's liability policy, wife's workers' compensation policy, and the couple's underinsured and uninsured motorist (UM/UIM) policy.  The potential value of the personal injury claim — which the district court ruled should be

split 60-40 in favor of wife — was significant given the apparent extent of wife's injuries and the UM/UIM policy's $500,000 limit.

¶ 4     Due to the involvement of three insurance companies and attorneys in three different states, progress on the tort claim was slow.  The slow-going proceedings led husband's attorneys to repeatedly press wife and her Florida and California attorneys for information about the claim's status and for documents related to the various policies and the claim itself.  Dissatisfied with what wife and her various attorneys provided, husband eventually filed a motion to compel in which he sought the immediate disclosure of "all detailed information and documentation relating to the personal injury claims, including execution of an authorization for [husband] and his lawyers to obtain information directly from insurance carriers."  Specifically, the motion requested:

     a.  An accounting of [wife's] claimed damages to date (including the total cost of medical treatment);

     b.  Amounts, details, and copies of all demands or offers to settle made on the workers' compensation and UM/UIM carriers;

     c.  A copy of the UM/UIM policy;

d. If an arbitration or lawsuit has been commenced against either carrier, the case/arbitration number, date of filing, name of the arbitrator(s) and location of the arbitration (or the specific court where a lawsuit has been filed), and a summary of the current status of the arbitration or lawsuit;

e. A copy of any fee agreements related to her personal injury claims (redacting any medical information or attorney client privilege);

f. A full accounting of all settlement funds or other proceeds [wife] and her counsel have received related to her personal injury claims; and

g. A copy of any tolling or similar agreements related to her personal injury claims.

h. An authorization for [husband] to obtain the complete claim files from all carriers in a form acceptable to [husband's] counsel.

¶ 5    Three weeks after husband filed his motion to compel, Springer entered her appearance for wife, substituting for her previous attorney. Shortly thereafter, she filed wife's response to the motion to compel. It was this response — specifically, its assertion that wife "has provided all information related to her personal injury claim that is in her possession, custody, or control" — that gave rise to the sanctions order that is now before

3

us.  Based on the representation that wife had already complied with husband's previous demands by turning over everything that was available to her, Springer argued in the response that husband's motion to compel was frivolous, groundless, and vexatious.  She then requested attorney fees and costs under C.R.C.P. 11 and section 13-17-102, C.R.S. 2024.

¶ 6     In a detailed written order, the district court ordered wife to produce the requested information.  Acknowledging that production might be duplicative of wife's previous disclosures, the court nonetheless reasoned that compliance should be simple given wife's claim that she had already turned over everything in her possession.  The court also noted that a do-over would shed light on the parties' "mutually exclusive representations" about what had or had not been previously disclosed and would allow it to determine "which party's characterization [wa]s more accurate or if some other alternative explain[ed] their mutually exclusive representations of apparently objective historical facts."  Foreshadowing the possibility of sanctions, the court noted that a party who "wishe[d] to pursue the dispute over Rule 11 compliance and/or application of [section]

4

13-17-102" would need to provide "a detailed and comprehensive discovery log" along with any such motion.

¶ 7    Wife, via Springer, complied with the court's order. Some of the materials that she provided had not been previously disclosed, including documents relating to the UM/UIM policy, wife's damages claims, demand and settlement offers, fee agreements, and payments that wife had received.

¶ 8    Both parties then submitted motions for attorney fees and sanctions. Wife argued that her disclosures demonstrated that she had, in fact, previously turned over everything in her possession and that, as a result, husband's motion to compel required her to needlessly incur additional attorney fees. For his part, husband maintained that wife — via Springer's response to the motion to compel — had misrepresented to the court that she had already disclosed all the requested materials and that the court should thus "award [husband] attorney fees and costs under [section] 13-17-102(4)."

¶ 9    The court agreed with husband. In a written order that focused on what it characterized as Springer's representation that "all the information requested had already been provided to

[husband]," the court concluded that wife's response to the motion to compel "lacked candor" and contained "erroneous and misleading" representations. The court found that an award of attorney fees and costs against wife was an appropriate sanction and — importantly for this appeal — that "[l]iability shall be joint and several between [wife] and the counsel signing the [r]esponse brief in opposition to the Motion to Compel at issue."

¶ 10  Springer sought reconsideration, but the court denied the motion. Eventually, it assessed $19,517.50 in fees against Springer and wife jointly.

¶ 11  Springer now appeals the sanctions orders, arguing that (1) the district court abused its discretion in awarding fees at all, as well as against her personally; and (2) in the alternative, if the award is upheld, the court erroneously calculated the total amount owed.

## II.  Imposition of Sanctions

¶ 12  Springer challenges the district court's imposition of sanctions generally and against her personally. Specifically, she argues that the court incorrectly found that the response to the motion to compel was misleading and that, in any event, the record lacks

6

evidence showing that she failed to conduct a reasonable investigation prior to filing the response.

### A.    Standard of Review and Applicable Law

¶ 13    The district court's sanctions orders referenced both C.R.C.P. 11 and section 13-17-102.  The decision to award attorney fees under either provision is committed to the discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse of discretion.  *Stearns Mgmt. Co. v. Mo. River Servs., Inc.*, 70 P.3d 629, 633 (Colo. App. 2003).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when the court misapplies or misconstrues the law.  *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 24.  When reasonable people could differ as to the propriety of the trial court's decision, it cannot be said that the court abused its discretion.  *See People v. Wilson*, 2014 COA 114, ¶ 35 ("[D]iscretion is abused only where no reasonable person would take the view adopted by the trial court.") (alteration in original) (citation omitted); *see also Vigil v. People*, 2019 CO 105, ¶ 14 ("In determining whether a trial court has abused its discretion, reviewing courts have . . . been admonished from considering merely whether they would have reached the same

conclusion and, instead, must affirm as long as the trial court's decision fell within a range of reasonable options.").

¶ 14 Section 13-17-102 exists "because our courts are burdened with unnecessary litigation that interferes with the effective administration of civil justice." *In re Marriage of Aldrich*, 945 P.2d 1370, 1378 (Colo. 1997). The statute creates "an important sanction available to a court in a civil case to punish an attorney or a party who engages in conduct improperly instigating or prolonging litigation." *Id.*

¶ 15 Under section 13-17-102(4), a court *shall* assess attorney fees if it finds that an attorney or party brought or defended an action, or any part of an action, "that lacked substantial justification . . . , was interposed for delay or harassment . . ., or . . . unnecessarily expanded the proceeding by other improper conduct, including . . . abuses of discovery procedures . . . ." An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a).

¶ 16 Whether a claim is substantially frivolous, substantially groundless, or substantially vexatious is a determination within the district court's discretion. *Hamon Contractors, Inc. v. Carter &*

8

*Burgess, Inc.*, 229 P.3d 282, 299 (Colo. App. 2009).  Vexatious

conduct includes conduct that is arbitrary, abusive, stubbornly

litigious, or disrespectful of truth.  *Bockar v. Patterson*, 899 P.2d

233, 235 (Colo. App. 1994).

¶ 17    C.R.C.P. 11(a) imposes affirmative obligations on an attorney

signing a pleading:

> The signature of an attorney constitutes a
> certificate by him that he has read the
> pleading; that to the best of his knowledge,
> information, and belief formed after reasonable
> inquiry, it is well grounded in fact and is
> warranted by existing law or a good faith
> argument for the extension, modification, or
> reversal of existing law, and that it is not
> interposed for any improper purpose, such as
> to harass or to cause unnecessary delay or
> needless increase in the cost of litigation.

¶ 18    If a pleading is signed in violation of this rule, the court, "*shall*

impose . . . an appropriate sanction, which may include an order to

pay to the other . . . parties the amount of the reasonable expenses

incurred because of the filing of the pleading, including a

reasonable attorney's fee . . . ."  *Id.* (emphasis added).  The

imposition of sanctions for a C.R.C.P. 11 violation is mandatory.

*Henry v. Kemp*, 829 P.2d 505, 506 (Colo. App. 1992).  The rule

requires the court to impose sanctions against the attorney, the client, or both. *Id.*

### B. Misleading Statements

¶ 19 At the heart of the district court's sanctions orders was wife's assertion in her response to the motion to compel that, "as [husband] is aware, [wife] has provided all information related to her personal injury claim that is in her possession, custody or control." The court found that this "representation and [the] line of argument flowing from the representation lacked candor," that the statement was "erroneous and misleading," and that "it was known to be so when made."

¶ 20 Springer contends that the court abused its discretion in reaching this conclusion because it failed to account for the broader context in which the statement appeared. Considering the response as a whole, Springer maintains, makes clear that wife was only asserting that she had already disclosed information that was *relevant* to the request — a category narrowly circumscribed by caveats in the court's prior orders and in wife's response itself.

¶ 21 This argument misunderstands the district court's order, which made no attempt to define or construe what information or

documents might or might not have been "relevant" in any technical sense. Instead, the court based its sanctions decision on the response's unqualified assertion that wife had already provided to husband "all information related to her personal injury claim that is in her possession, custody or control." That assertion, the court concluded, was proven false when the tranche of documents wife provided after the court ordered a disclosure do-over included materials that were not included in wife's previous discovery responses.

¶ 22 We acknowledge Springer's argument that wife's belated disclosure of the documents in question does not, standing on its own, necessarily establish that wife possessed or had control of them at any previous point. But that contention again misses the mark. The court was primarily concerned with candor, and its conclusion that Springer's representation was "erroneous and misleading" has ample record support. As one example, the court noted that Springer made factual assertions in her briefing that were not adequately supported by an affidavit from wife that she cited as the information's source. For another, the court found, "[a] tolling agreement existed and [wife] failed to provide a copy to

11

[husband] despite the line of argument presented in opposition to the Motion to Compel (and, moreover, failed even to disclose clearly whether such an agreement existed)."

¶ 23    As the district court noted,

> In a discovery dispute, a significant difference exists between asserting that one has produced the existing record and then failing to clarify whether the record even exists (in this case, the inference from the briefing was that none existed but we now know one did exist) or asserting that the record does exist, has been pursued diligently, but one's own lawyer is refusing to produce.

¶ 24    We agree with this observation and conclude that the district court did not abuse its discretion in finding that the response's representation about the extent of wife's previous disclosures was untrue and lacked substantial justification. *See* C.R.C.P. 11(a); *Stepanek v. Delta Cnty.*, 940 P.2d 364, 370 (Colo. 1997) (imposition of Rule 11 sanctions does not necessitate showing of bad faith on part of attorney who certifies pleading; instead, sanctions are appropriate where attorney's signed pleading fails to meet test of objective reasonableness); § 13-17-102(9)(a) (An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious.").

## C. Reasonable Investigation

¶ 25    We turn next to Springer's contention that the court abused its discretion in imposing sanctions because (1) she did not know her representation was inaccurate, and (2) she made a reasonable inquiry prior to responding to husband's discovery requests. Because this argument is unpreserved, we do not address it on the merits.

¶ 26    "Arguments raised for the first time in a reply brief before a trial court are not properly before an appellate court where the opposing party was unable to respond, and the trial court made no findings or conclusions with respect to that contention." *Grohn v. Sisters of Charity Health Servs. Colo.*, 960 P.2d 722, 727 (Colo. App. 1998); *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 118 ("We ordinarily will not consider issues raised for the first time in a reply brief before the district court.").

¶ 27    After wife complied with the motion to compel, husband filed a motion requesting a fee award "against [wife]" under section 13-17-102(4).  The district court, however, awarded fees under both section 13-17-102(4) and C.R.C.P. 11 and made liability for those fees "joint and several between [wife] and [Springer]."

13

¶ 28     Springer filed a motion for reconsideration in which she denied

making inaccurate representations in the response to husband's

motion to compel and asserted that the statements that wife made

"in her affidavit were made in good faith based on information she

had obtained from California counsel."  The motion to reconsider

did not challenge the court's decision to sanction Springer

personally, nor did it assert that she should not be penalized under

C.R.C.P. 11 because the representations at issue had been based

on a reasonable investigation.  Springer did, however, raise the

issue in her reply brief, arguing for the first time that the predicate

conditions for sanctions under C.R.C.P. 11 had not been met and

attaching an affidavit stating, among other things, that Springer

and an associate attorney had "undert[aken] efforts . . . to educate

[themselves] as to the status of this complex case and to review the

voluminous pleadings" before filing wife's response to the motion to

compel.

¶ 29     The district court acknowledged Springer's argument but

concluded that she waived it by raising it too late.  As the court put

it, "[t]he time to present any defense by counsel making the

representation that they did not know their representation was

inaccurate and/or that they had made reasonable inquiries before making the erroneous representation was when the request was made for sanction[s] under Rule 11, not after the sanction was imposed." Because Springer chose a different tack in the sanctions briefing — arguing throughout that sanctions were unwarranted because there were no misleading statements in wife's response to the motion to compel — the court declined to consider her newly raised assertions of due diligence.

¶ 30     Springer maintains that both her arguments are timely. She points out that husband's motion only referenced section 13-17-102(4) and did not request a fee award against her personally, and argues that, as a result, she had no reason to address the C.R.C.P. 11 standards. That argument might have some force if Springer had included details about her prefiling investigation in her motion for reconsideration. *See* C.R.C.P. 46 ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."). But, despite the district court's explicit invocation of C.R.C.P. 11 in its first sanctions order, Springer waited until filing her reply brief in support of the motion for reconsideration to raise it for the first

15

time.  This deprived husband of the opportunity to respond to the argument, and under those circumstances we cannot conclude that the district court abused its discretion by concluding that the issue was waived.  *See Coomer*, ¶ 118.

### D.    Amount Assessed

¶ 31    Finally, Springer argues the court abused its discretion when it awarded fees and sanctions for (1) work done by husband's attorneys before she entered her appearance in the case and (2) time spent by husband's attorneys responding to her motion for reconsideration.  We agree with her first argument, but not the second.

¶ 32    "Proper sanctions under C.R.C.P. 11 may include an order to pay the other party's reasonable expenses *incurred in response to the pleading* as well as reasonable attorney fees."  *Stepanek*, 940 P.2d at 370 (emphasis added).  Similarly, sanctions under section 13-17-102(4) are intended to compensate the opposing party for actions that lack substantial justification.  We do not interpret either provision as encompassing behavior that predates an attorney's involvement in the case.  In other words, because there is nothing in the record that would support a conclusion that Springer

engaged in any misconduct related to the motion to compel before she entered her appearance, the court could not impose sanctions against Springer for fees incurred by husband during that time period.[1]

¶ 33 We reach the opposite conclusion with respect to fees incurred by husband in responding to Springer's motion for reconsideration. It was well within the district court's discretion to conclude that husband should not be required to incur the financial burden associated with defending the propriety of the sanctions that it had already awarded.

### III. Appellate Attorney Fees

¶ 34 Husband requests an award of appellate attorney fees under C.A.R. 38(b). Springer partially prevailed in this appeal, and her unsuccessful appellate arguments were not frivolous or otherwise sanctionable. We therefore decline to award appellate attorney fees.

---

[1] The district court could, however, and did, impose sanctions against *wife* for attorney fees incurred before Springer's entry of appearance. That portion of the award has not been challenged in this appeal. On remand, the court should subtract that portion of the fees from the overall total, leaving wife solely responsible for her misconduct before Springer's entry of appearance, and wife and Springer jointly and severally liable for the fees incurred by husband after Springer's entry of appearance.

## IV. Disposition

¶ 35 We affirm the court's imposition of sanctions under C.R.C.P. 11 and section 13-17-102(4). We reverse the court's award of attorney fees against Springer to the extent that it applies to fees incurred by husband before Springer entered her appearance in the case. We remand the case with instructions to the district court to recalculate the fees for which Springer and wife are jointly and severally liable.

JUDGE HARRIS and JUDGE PAWAR concur.